GRIFFIN, Judge,
concurring in part and dissenting in part.
I concur in the opinion of the majority except in its conclusion that Utica is liable to reimburse Pennsylvania National for its $625,000 contribution to the settlement with Travelers. The majority holds that Travelers made multiple claims against Newman-Crane and Huston Crane [Crane], Utica and Pennsylvania National’s insureds, thus making Utica liable for the entire settlement. In essence, the majority opinion concludes that because the word “claim” is not defined in the Utica policy and because this case presents a fact pattern involving something other than a single act of negligence by the insured on a specific date giving rise to an exact amount of loss to a single claimant, making the question of the number of claims uncertain, the appropriate solution is to apply a rule of construction that “maximizes coverage” to the insured. This is so despite the fact that the parties to this insurance contract, Utica and Crane, both agree that they intended their insurance contract to treat such a loss as a single claim. Apparently, the insured, Crane, preferred to “maximize” indemnity by minimizing his deductible rather than “maximize” coverage, which he didn’t need.
I dissent because I think there is an objective legal answer to the question of how many claims were made by Travelers against Crane. The issue is not so arcane or confounding that it has to be answered by a rule of construction. Also, it bothers me that given the same set of facts on liability, the answer to the question of the number of claims should depend on the amount of coverage. Suppose instead of Crane’s $5,000 per claim deductible, the deductible were $150,000 per claim. Applying the majority’s rule of construction, the number of claims would switch from seven to one.
The fact that there are several possible answers to the question of how many claims *45 Travelers made against Crane does not mean there is not a correct one capable of identification by the trial court based on what are essentially undisputed facts. Travelers claimed that in March 1985 its agent, Crane, learned adverse financial information about CM Systems, Inc. [“CM Systems”] that he failed to disclose, as he should have, the moment he learned it. As the result of Crane’s breach of duty, Travelers issued a total of 64 bonds of various types to CM Systems that Travelers claimed it would not have issued had it known the true facts. Apparently, there were defaults on several CM Systems projects, resulting in 173 payment bond claims against Travelers by suppliers and subcontractors and seven performance bond claims by the owners of seven projects. These monies were paid out by Travelers over a two year period, from 1986 through 1988. Travelers claimed a multimillion dollar loss as the result of its agent’s omission, consisting of the sums expended in payment of all 180 claims, consulting fees to administer the CM Systems losses, and attorney’s fees. The net total amount of Travelers’ loss is what it asserted as a claim against Crane — all arising out of a single, though continuing, act of misfeasance by Crane.
It is doubtful that any definition of “claim” that Utica might have included in its “Insurance Agents’ and Brokers’ Errors and Omissions Policy” would have shed any light on the number of claims made by Travelers in this context. It is important, however, that the Utica policy issued to Crane that we are attempting to interpret was written on a “claims made” basis. It provided in pertir nent part:
INSURING AGREEMENTS
1. Insuring Clause: To pay on behalf of the insured all sums ivhich the insured shall become legally obligated to pay as damages by reason of liability arising out of any negligent act, error or omission, whenever or wherever committed, or alleged to have been committed by the insured or any person employed by the insured in conduct of the named insured’s business as Insurance Agents, Insurance Brokers or General Insurance Agents, which shall include the related activities connected therewith of notarizing (provided a specific premium charge is indicated on the declarations page hereof) appraising real estate and claims adjusting with respect to policies written or placed through the insured premium financing, counselling as respects insurance programs (including insurance advice rendered as a public service to local organizations), the sale of mutual funds, and servicing of the insurance business of others, provided hoivever, that:
(a) a claim resulting from such act or error or omission is first made against the insured during the policy period as defined herein. [Emphasis added].
The policy period was January 15, 1986 to January 15, 1987. Travelers began issuing bonds to CM Systems in 1983. Crane first learned the adverse financial information about CM Systems in March 1985. The CM Systems’ project bonds that resulted in losses and on which Travelers filed suit were issued during the period June through December 1985.[1] Travelers suffered losses on bonds it issued before March 1985 but made no claim for these losses. Also, Travelers suffered no loss in connection with some of the CM Systems bonds written after Crane learned of the adverse financial information. The bonds that did not result in a loss yielded a substantial premium profit[2] to Travelers that it would not have had under Travelers’ own theory if Crane had conformed to his duty of disclosure. In effect, there was an overall net loss suffered by Travelers that it sought to attribute to Crane’s misfeasance.
During the course of Traveler’s investigation of the CM Systems loss in September 1986, Crane voluntarily gave a sworn statement to Travelers. After Crane testified about what he knew, when he knew it and his *46 failure to inform Travelers, counsel for Travelers suggested to Crane that he should put his E & 0 carrier on notice. Crane advised Utica of a “possible E & 0 claim” by letter dated September 30,1986. That notice is the claim triggering coverage during the January 1986 — January 1987 policy term. Thereafter, on October 24, 1986, Travelers’ counsel wrote a letter to Crane placing him formally on notice of Travelers’ intention to “assert a claim” against Crane’s carrier. Travelers’ counsel simultaneously informed Utica in writing of “a potential claim.” As described by Travelers’ counsel, the “claim” was as follows:
Prior to the issuance of the aforesaid surety bonds, the above named individual and entities specifically obtained various information concerning the activities of C.M. Systems, Inc. and related individuals, that materially increased the risk of loss to The Travelers as to the subsequent issuance of these bonds. It is our position that your insured negligently failed to disclose this information to The Travelers, when it had a clear legal duty to do so. Furthermore, had this information been so disclosed, The Travelers would not have executed the various, subsequent surety bonds. As of this date, C.M. Systems, Inc. has defaulted under its obligations relating to these various surety bonds, which has resulted in current and anticipated losses to The Travelers Indemnity Company of an amount probably in excess of $5,000,000.
When Travelers subsequently filed suit against Crane, the' complaint contained fourteen counts. At trial, counsel for Travelers acknowledged that the purpose of the multiple counts was to try to increase coverage by creating multiple claims. Nevertheless, the core allegation for all counts was very specific:
13.On or about March of 1985, defendant, NEWMAN-CRANE, was advised by principals of C.M. SYSTEMS, that they had entered into certain personal and/or corporate investments which would materially affect and impact their financial condition, as well as that of the corporation. The information imparted to Defendant, NEWMAN-CRANE, was the type of information that Plaintiff had requested from Defendant, NEWMAN-CRANE and said Defendant had agreed to obtain for Plaintiff.
14. Defendant, NEWMAN-CRANE, contrary to the terms and conditions of its agreement with Plaintiff, and in material breach thereof, failed to advise Plaintiff of said investments.
15. As a direct and proximate result of the aforementioned material breach, Plaintiff continued to issue construction bonds in favor of C.M. SYSTEMS.
sj: }}{ }{« ¡¡c # sfc
20. TRAVELERS would not have undertaken to issue the subject bonds had the true financial status and condition of C.M. Systems, known to exist by Defendant, NEWMAN-CRANE, had been made known to TRAVELERS.
The record also reflects that as late as December 6, 1990, after monitoring Travelers’ suit against Crane for three years, Pennsylvania National itself considered that the total available coverage under both policies to be $1.5 million (ie. $500,000 from Utica and $1 million under its umbrella policy).
The most analogous case — indeed the only analogous case cited by the parties — is Pioneer National Title Insurance Co. v. Andrews, 652 F.2d 439 (5th Cir.1981). In that case, a legal malpractice action was brought against an attorney hired to search the title of a tract of land. He did so negligently and thereafter issued three letters of certification over several months incorrectly describing the state of title. The court viewed the attorney’s negligence as a single, continuing act and refused to create coverage for multiple “claims.” Although this case is not entirely on point, its reasoning is instructive. In the present case, the duty to disclose arose when the adverse financial information was learned; if disclosed at the outset, it would have prevented Travelers’ loss.- The fact that there was a continuing failure to disclose every day, including those days when CM Systems applied for new bonds, does not create a new claim for each failure to disclose. As reflected in the record, Webster’s Ninth New Collegiate Dictionary defines a “claim” as “a demand for something *47 due or believed to be due (insurance).” It seems apparent that what Travelers made was “a claim” for its net loss allegedly caused by Crane’s breach of duty as agent.

. They suffered losses on three bonds issued before Crane learned the adverse financial information he failed to disclose.

. The record shows that CM Systems bonds generated in excess of $100,000 in premiums to Travelers in the second quarter of 1985 alone.